C. A. SCHMIDT, Administrator with Will Annexed of the Estate of James A. Cruickshank, Deceased, Appellant, v. FIRST NATIONAL BANK OF BISMARCK, NORTH DAKOTA, a Banking Corporation, Respondent.

(232 N. W. 314.)

. Opinion filed August 1, 1930. Rehearing denied October 14, 1930.

*J. N. McCarter* and *W. L. Smith,* for appellant.
*Schwartz & Sperry* and *F. E. McCurdy,* for respondent.

BIRDZELL, J. The plaintiff brings this action to recover from the defendant on account of a certain deposit which had been made in the defendant bank and which, prior to the commencement of this suit, had been repaid to the depositors, it being the claim of the plaintiff that the defendant is answerable to him for the amount of the deposit, notwithstanding its payment, by reason of facts which will be stated below. The defendant had judgment in the district court and the plaintiff appeals. The facts out of which the controversy arises are as follows:

John P. Cruickshank was the owner of certain cattle which he had mortgaged to James A. Cruickshank of Washington county, Nebraska, as security for an indebtedness. He sold these cattle to one. August Weige for $795, but because of the mortgage Weige would not pay over the agreed purchase price. An arrangement was made whereby the First State Bank of Zap, North Dakota, on October 3, 1925, forwarded to the defendant, the First National Bank of Bismarck, a draft for the proceeds of the sale of the cattle ($795) with the request that it be deposited to John Cruickshank, August Weige, and L. R. Baird, as receiver, to be held until it should be determined to whom the money belonged. Actions were later brought in the district court of Mercer county by certain creditors of John Cruickshank, including Baird, as receiver of two banks, and the defendant and August Weige were joined as garnishees. The plaintiff intervened in those actions, setting up a claim to the proceeds of the sale based upon the chattel mortgage. But no petition or complaint in intervention was served on the present de-

fendant who was a garnishee; nor does it appear that such garnishee was ever called upon to litigate with the intervener, now plaintiff, either the character of his claim or the capacity in which it was answerable for the deposit. The defendant made a disclosure in garnishment showing the deposit and the terms thereof. Weige likewise made a return as garnishee showing his purchase of the cattle and the making of the deposit under the conditions referred to. The actions were consolidated and tried as one. At the conclusion of the trial, it having been shown that a certificate of deposit was issued prior to the service of the garnishment summons, a judgment was entered dismissing the garnishments. It was further adjudged, however, that the estate of James A. Cruickshank, deceased, intervener, have and recover judgment against John P. Cruickshank for the sum of $986.55, which judgment "shall be and remain a first lien upon that certain money deposited with the First National Bank of Bismarck, North Dakota, on or about October 5, A. D. 1925," and it was further adjudged that the First National Bank of Bismarck, North Dakota, should hold the money in trust for the estate of the said James A. Cruickshank until such time as the estate should have been fully probated in the county court of Mercer county, North Dakota, and that then, upon presentation to it of certified copies of letters of administration showing that said estate had been properly probated and the administrator duly appointed as provided by law, the bank should pay over to said administrator or to J. N. McCarter, his attorney, all money that it might have in its possession or under its control belonging to the said estate not exceeding the sum of $986.55. There are no findings or conclusions with respect to the causes of action of the plaintiffs against the defendant in the main action; so, apparently, the consolidated suits by the plaintiff creditors against John P. Cruickshank were converted into a suit by the administrator of James A. Cruickshank, deceased, against John P. Cruickshank.

Prior to the commencement of the actions in which the above judgment was rendered, the present plaintiff, as administrator of the estate of James A. Cruickshank, deceased, appointed by the probate court of Washington County, Nebraska, executed and delivered to John P. Cruickshank a power of attorney authorizing him to collect and receipt for any and all moneys received from the sale of the personal

property covered by this particular mortgage from John P. Cruickshank to James A. Cruickshank.

After the foregoing judgment was entered the First State Bank of Zap, which had originally transmitted the money to the defendant, notified the defendant that matters had been settled and requested that the deposit be remitted to it. In response to this request the defendant remitted the money, with interest, to the First State Bank of Zap, which bank in turn paid the money to John P. Cruickshank who receipted for the same.

After the payment of the money as stated, the plaintiff herein was, by the county court of Mercer county, North Dakota, appointed administrator of the estate of James A. Cruickshank, deceased, and later brought the present action predicated on the refusal of the defendant bank to pay the money a second time, claiming that its liability to pay the money to him under his North Dakota appointment had been adjudicated in the judgment above referred to. At the conclusion of the trial of this action, both parties having moved for a directed verdict, the court discharged the jury and, after finding, among others, the above facts, ordered the dismissal of the action.

The first contention is that the attempt of the defendant to avoid the terms of the judgment entered in the proceeding in which it was a garnishee constitutes a collateral attack on the judgment. No issue was ever taken upon the disclosure of the garnishees and there is no recital or finding that at the hearing of the actions in which the judgment was rendered there was any appearance by or on behalf of the garnishees in any proceeding affecting the intervener. There is a recital of appearances on behalf of the plaintiff and the defendant; also, the intervener. There is no recital of service upon the garnishees of any petition for intervention or any complaint in intervention, but there is a "stipulation for interpleader" whereby the attorneys for the plaintiff and defendant therein stipulated that the issues might be submitted in the same manner as if the administrator had been properly and duly interpleaded. The garnishees are ignored in this stipulation.

What issues were involved between the intervener and the defendant does not appear. The only service shown upon the bank is the service of the garnishment summons which calls upon the bank to answer whether it has in its possession any property belonging to the defend-

ant. In its answer or disclosure it makes no reference to any claim by the estate of James A. Cruickshank. Presumably, it was entirely ignorant of any such claim. It did not ask that the estate be interpleaded as a defendant to the garnishment action (Comp. Laws 1913, § 7582) and it did not deliver the money to the clerk of court as it might have done had it been aware of and set forth facts making interpleader under § 7582 appropriate. On the contrary, it set forth facts showing that it was not subject to garnishment at all (§ 7584), and such was the ruling of the trial court as evidenced by the dismissal of the garnishment. There being no interpleader and no issues framed between the garnishee and the intervener, nor any service upon it of proceedings in intervention, and there being a judgment, prima facie regular, dismissing the garnishment, is the further provision of that judgment purporting to adjudicate the liability of the defendant to the intervener regular and valid as against a collateral attack or is it void on its face?

Where there has been no interpleader and yet where the funds sought to be recovered from the garnishee are claimed by another, if the claim be established the garnishment proceeding should be dismissed. But such claimant may not in that proceeding recover judgment against the garnishee. He is left to pursue his remedy the same as if no garnishment suit had been brought. Rood, Garnishment, § 351; Carpenter v. McClure, 37 Vt. 127, 132. In First Nat. Bank v. Mellen, 45 Mich. 413, 8 N. W. 80, the third party claimant had obtained an order containing the following recital: "Therefore it is adjudged and determined that said claimants do recover of and from the said the First National Bank of Port Huron the sum of 75 and 31/100 dollars without costs, and that the said claimants have execution thereof." Treating that order as a judgment in favor of the claimants, the plaintiff in the garnishment suit brought error to review it and the supreme court, speaking through Cooley, J., said: "This order is no judgment. There was no suit pending between the plaintiff and the Mellens (claimants) in which a judgment could be entered. The suit pending was the garnishee suit, the defense of which the Mellens had been permitted to take upon themselves, and this order was collateral to that suit." It was held that error would not lie upon it and the writ was dismissed. In Hewitt v. Follett, 51 Wis. 264, 8 N. W. 177, where a third party

set up a claim to the fund owing by the garnishee and which the plaintiff was seeking to reach by garnishment proceedings, the court said: "If she (the claimant) proved the money was due to her, she could not recover it of the garnishee in that action. If the garnishee had admitted a certain amount due on the contract, and had paid the amount into court, and the verdict between the plaintiffs and the appellant had been in her favor, it is probable the court would have directed the money so paid into court to be delivered to the appellant, if she had made application therefor; but, if she had been dissatisfied with the amount paid in, she would not have been likely to receive it, but would have sought her redress in an action upon her contract. We think the court would not have been justified in changing this garnishee action to an action between the appellant and the garnishee upon the contract; and the appellant would have been compelled to commence an action against the garnishee upon the contract, if one had not already been commenced, in order to recover the amount due her from him." In other words, where there is no interpleader, such as is authorized by § 7582 of our garnishment statute, and money is not paid into court by the garnishee, any contest between the plaintiff in the main action and an intervening third party claimant can only determine whether or not the plaintiff is entitled to succeed in his garnishment proceedings; and, since there is no action pending between the claimant and the garnishee and no issues to be litigated between them, a provision in the judgment purporting to bind the garnishee in favor of such claimant is void on its face. It purports to adjudicate a matter that can only be determined at the end of a suit regularly brought for that purpose or in a garnishment proceeding where the garnishee has assumed the attitude of a stakeholder under § 7582.

Since, under § 7584 of the Compiled Laws of 1913, no judgment could have been properly entered against the bank as a garnishee and a proper judgment was entered in its favor, and since the judgment entered shows on its face that there was no action pending between the intervener and the bank and no issues framed, that part of the judgment which is against the bank appears on its face to be wholly irregular and unwarranted.

In Carpenter v. McClure, 37 Vt. 127, 132, supra, where a judgment entered in favor of a third party claimant in a trustee or gar-

nishment suit was sought to be invoked in a subsequent action by him against the trustee, the court, among other things, said (page 132):

"But if it shall be adjudged that the claimant has the better right, then a judgment is rendered that the trustee be discharged. Now what is settled by that judgment? Simply that as between the claimant and the principal debtor the claimant has the right to the funds in the trustee's hands if any; but no judgment has been rendered fixing the amount in the trustee's hands, or that there is any amount in his hands. No judgment has been rendered that at all bears upon those questions on either side. The claimant is left to pursue his remedy against the trustee the same as though no trustee suit had ever been brought, and the trustee has the same right to defend. Perhaps he could not set up by way of defense that the principal debtor was the owner of the property in his hands, but so far as the question of liability is concerned the whole matter is left open."

In order for the judgment in the garnishment proceedings to be conclusive as between the garnishee and the creditor, it is essential that both shall be parties to the proceedings which determine the third party claim. See 2 Freeman, Judgm. (5th Ed.), § 842. The nature of such proceedings, including the issues which may be made, are largely controlled by statute. When they are judicial and adversary in character the judgment is conclusive in subsequent litigation to the extent of the actual adjudication. 2 Freeman, Judgm. (5th Ed.), § 844.

Where, as here, the record of a judgment affirmatively shows that the court was without power to make the judgment it assumed to make, the judgment is void and open to impeachment in a collateral proceeding. 1 Freeman, Judgm. (5th Ed.), § 382. This author says (§ 382):

"The usual presumptions of jurisdiction and regularity do not come to the aid of a record invalid on its face, for presumptions arise only where the record is silent upon some fact and cannot be resorted to in opposition to its plain terms. The whole of the record must be looked to to ascertain whether or not jurisdiction appears from the record, . . ."

The record of the judgment in the instant case clearly discloses that there were no proceedings to which the plaintiff and the defendant were parties which purported to adjudicate the right of the plaintiff to recover any definite sum of the defendant which the latter was required

to hold in a trust capacity for the plaintiff until certain conditions were fulfilled.

As is said by the supreme court of New Jersey in Munday v. Vail, 34 N. J. L. 418, at page 422:

"It is impossible to concede that, because A and B are parties to a suit, that a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons, by becoming suitors, do not place themselves, for all purposes, under the control of the court, and it is only over these particular interests which they choose to draw in question, that a power of judicial decision arises. If, in an ordinary foreclosure case, a man and his wife being parties, the Court of Chancery should decree a divorce between them, it would require no argument to convince every one that such decree, so far as it attempted to affect the matrimonial relation, was void; and yet the only infirmity in such a decree would be found, upon analysis, to arise from the circumstance that the point decided was not within the substance of the pending litigation. In such a case the court would have acted within the field of its authority, and the proper parties would have been present; the single but fatal flaw having been the absence from the record of any issue on the point determined. The invalidity of such a decree does not proceed from any mere arbitrary rule, but it rests entirely on the ground of common justice. A judgment upon a matter outside of the issue must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard. And it is upon this very ground that the parties have been heard, or have had the opportunity of a hearing, that the law gives so conclusive an effect to matters adjudicated."

Where a judgment purports to conclude a party upon an issue which was in no manner presented by him, it is an extrajudicial determination. It is essential not only that the court have jurisdiction of the parties and the subject-matter of the action, but that the issues decided shall have been first submitted (Hurr v. Davis, 155 Minn. 456, 193 N. W. 943, 194 N. W. 379), and a judgment outside of the issues is not a mere irregularity but is an extrajudicial determination and invalid. 1 Freeman, Judgm. (5th Ed.) § 355.

We are clearly of the opinion that the judgment relied upon to con-

clude the defendant in the instant case, in so far as it purports to adjudicate its liability to the plaintiff, is void on its face and open to collateral attack.

Since the defendant is not concluded by the judgment in the former action in which the present plaintiff was intervener, and since a prima facie case of liability therefore cannot be made by proof of judgment and the fulfillment of the conditions stated therein, it becomes proper in considering the correctness of the judgment for the defendant, from which the plaintiff now appeals, to determine the effect of the power of attorney. This power of attorney was given on December 29, 1925, and, as previously stated, it refers specifically to the chattel mortgage given by John P. Cruickshank to James A. Cruickshank covering the property which was sold by the former to Weige, and it authorized John P. Cruickshank to collect and receipt for all the moneys received from the sale. The record shows that he received the money which had at one time been deposited in the defendant bank as the proceeds of such sale and that he had receipted for the same. Under the familiar doctrine that payment to the agent is payment to the principal, the plaintiff clearly has no cause of action against the defendant and the judgment was rightfully entered in favor of the latter.

Judgment affirmed.

BURKE, Ch. J., and BURR and NUESSLE, JJ., concur.

CHRISTIANSON, J., did not participate.